UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

JAMAR WALKER,

            Plaintiff,

v.

UNKNOWN MARTIN et al.,

            Defendants.
_____/

Case No. 2:22-cv-85

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Martin and Horton. The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation claim, as well as his claims for declaratory and injunctive relief, against Defendant Curtis.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Inspector Unknown Martin, Corrections Officer Unknown Curtis, and Warden Connie Horton.

Plaintiff alleges that on November 25, 2020, Defendant Curtis sexually assaulted him while Plaintiff was occupied with cleaning as part of his job detail. Plaintiff states that Defendant Curtis entered the cell and immediately requested a shakedown from Plaintiff. Plaintiff complied as required by prison policy. Defendant Curtis then began to grope Plaintiff's buttocks in a sexual and inappropriate manner, telling Plaintiff that he had confiscated a note saying that Plaintiff had "good boy pussy." (ECF No. 1, PageID.5.) Plaintiff began to step away, but Defendant Curtis ordered him not to move his "homo thug ass" or he was going to segregation. (*Id.*) Defendant Curtis then groped Plaintiff's penis and said, "From the feel of your penis your [sic] enjoying this as much as I am." (*Id.*) Defendant Curtis then ordered Plaintiff to continue his job detail and stated that he was going to make Plaintiff pay for being a homosexual. Shortly thereafter, Plaintiff was occupied cleaning another cell when Defendant Curtis entered and ordered Plaintiff to give him another shakedown to check and see if Plaintiff had hidden contraband in his "boy pussy and if he had been having sex." (*Id.*) Defendant Curtis also told Plaintiff that if he refused he would be going to "Stingboat for 6 months for assault on staff." (*Id.*) Plaintiff complied and Defendant Curtis pulled Plaintiff's pants down and forcefully penetrated Plaintiff's anus with his fingers, causing Plaintiff pain. Defendant Curtis stated, "That boy pussy feel a little broken in, but it still got my

dick hard so you good to go." (*Id.*) Plaintiff was then ordered to leave the room and not to say anything.

On December 27, 2020, Plaintiff filed a PREA grievance and a witness declaration from Chrisshawn Upchurch. Plaintiff also called the PREA hotline but did not get a response. Plaintiff filed a second PREA grievance on January 2, 2021 (ECF No. 1-1, PageID.15) and kited mental health service seeking psychological help (ECF No. 1-2, PageID.19). Plaintiff was seen by Licensed Social Worker Arvid Clark on January 25, 2021. In the mental health progress note, Social Worker Clark notes that Plaintiff reported filing two PREA complaints and had not yet gotten any response. (ECF No. 1-2, PageID.17.) Plaintiff reported being groped in Neebish Unit by someone he believed was Defendant Curtis, and that since moving to Marquette Unit, another officer had been staring at him and making inappropriate comments about Plaintiff's buttocks. Social Worker Clark told Plaintiff that he would report these incidents to Defendant Martin in case he was not aware of them.

On March 10, 2021, Plaintiff submitted another PREA grievance along with the Chrisshawn Upchurch witness statement. (ECF No. 1-3, PageID.21-22.) In the witness statement, Mr. Upchurch avers that on November 25, 2020, at approximately 4:30 p.m., he was passing a cell in Neebish Unit while working as a Unit Porter, when he observed Plaintiff pulling his pants up from below his buttocks while Defendant Curtis stood behind him in the cell. (*Id.* at PageID.22.)

Plaintiff called the PREA hotline on May 2, 2021. In a memorandum from Defendant Martin on May 5, 2021, Plaintiff was advised that his PREA allegation had been received and reviewed and that he had alleged sexual harassment that had not been previously investigated. (ECF No. 1-4, PageID.24.) Plaintiff was told that his allegations would be investigated and that the number assigned to his investigation was AIM #37251. (*Id.*) Plaintiff received the

memorandum on May 10, 2021. Plaintiff did not receive a PREA grievance ID or a receipt number, and was told that the AIM # was all that was needed.

Plaintiff's PREA grievance was denied as unsubstantiated on June 15, 2021, due to insufficient evidence. (ECF No. 1-5, PageID.26.) Plaintiff claims that his PREA grievance did not receive a proper investigation. Plaintiff states that he was told that if he wished to grieve any further issues with PREA he should file a standard grievance form.

On June 24, 2021, Plaintiff filed a grievance reasserting the facts of the alleged sexual assault and stating that his PREA complaint was never investigated properly. Plaintiff's grievance was rejected on July 6, 2021, by Grievance Coordinator McLean, who stated that Plaintiff was attempting to submit a PREA grievance on a CSJ-247A form, and that the complaint was being processed as a PREA sexual abuse complaint. Plaintiff's grievance was given the identifier URF-21-07-1729-28z. (ECF No. 1-7, PageID.41.) Plaintiff states that the rejection was upheld at steps II and III.

Plaintiff also filed a grievance against Defendant Martin for interfering with the PREA grievance process by delaying Plaintiff's receipt of an AIM number in violation of MDOC policy. (ECF No. 1-8, PageID.46.) The step I grievance response summarizes Plaintiff's complaint: "Prisoner Walker claims that Inspector Martin has impeded a PREA investigation. Walker states that he was never provided a number for his PREA complaint and that Inspector Martin didn't process his claim in a timely manner." (ECF No. 1-8, PageID.49.) The response summarizes the investigation:

> Inspector Martin was asked about this issue. Prisoner Walker filed a complaint on 4/29/21 and stated that he wanted an AIM number the next day. Inspector Martin stated that he could not provide one to Walker the next day because one wasn't given to him by Internal Affairs. Once an AIM number was given, Inspector Martin provided it.

> Prisoner Walker was interviewed as well. Prisoner believed that he should've received an AIM number for a complaint he filed the same day. Prisoner didn't understand that an AIM number doesn't always come back that quickly. Prisoner became argumentative when interviewed and did not want to discuss any further.

(*Id.*)

> The respondent concluded:
>
> I find no merit to this grievance. Prisoner Walker filed a complaint and submitted it to the PREA office. The complaint was submitted and an AIM number of 37251. Inspector Martin authored a memo for Prisoner Walker indicating such on May 5th, 2021. It is attached to this grievance for reference. Inspector Martin did not impede on the investigation.

(*Id.*) The step II response affirmed that Plaintiff's grievance lacked merit, noting that Plaintiff had expected to receive an AIM # the same day he submitted his PREA complaint, and that he had been given an AIM # the next day. (ECF No. 1-10, PageID.56.)

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff seeks compensatory and punitive damages and costs, as well as declaratory and injunctive relief.

**II.      Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

5

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Horton

Plaintiff claims that Defendant Horton failed to correct the misconduct of her subordinates, which caused Plaintiff pain and suffering. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's

6

subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Horton encouraged or condoned the conduct of her subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about her conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Horton was personally involved in the events surrounding Plaintiff's alleged sexual assault or the handling of Plaintiff's PREA complaint. Conclusory allegations of unconstitutional conduct without specific factual

7

allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claim against Defendant Horton is premised on nothing more than respondeat superior liability, he fails to state a claim against her.

    **B.**    **Defendant Curtis**

        **1.**    **Eighth Amendment**

Plaintiff claims that Defendant Curtis violated his Eighth Amendment rights when he sexually assaulted Plaintiff on November 25, 2020. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain'" forbidden by the Eighth Amendment. *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

As stated above, Plaintiff claims that Defendant Curtis initially groped his buttocks in a sexual and inappropriate manner, telling Plaintiff that he had confiscated a note saying that Plaintiff had "good boy pussy." (ECF No. 1, PageID.5.) Plaintiff further alleges that Defendant Curtis subsequently groped Plaintiff's penis and said, "From the feel of your penis your [sic] enjoying this as much as I am." (*Id.*) Later the same day, Defendant Curtis allegedly ordered Plaintiff to give him another shakedown to check and see if Plaintiff had hidden contraband in his "boy pussy and if he had been having sex," during which he pulled Plaintiff's pants down and forcefully penetrated Plaintiff's anus with his fingers, causing Plaintiff pain. During this act,

8

Defendant Curtis stated, "That boy pussy feel a little broken in, but it still got my dick hard so you good to go." (*Id.*) Because Plaintiff has alleged facts to show that he suffered pain as a result of sexual abuse and that Defendant Curtis acted with a sufficiently culpable state of mind, the Court concludes that he has succeeded in stating an Eighth Amendment claim against Defendant Curtis.

However, the Court notes that in addition to seeking compensatory and punitive damages, Plaintiff is also seeking declaratory and injunctive relief.

> When an inmate files suit against prison officials at the institution of his incarceration based upon those officials' wrongful conduct seeking declaratory and injunctive relief and that inmate is subsequently transferred or released, courts routinely dismiss the declaratory and injunctive relief claims as moot. *Sossamon v. Texas*, 131 S. Ct. 1651, 1669–70 (2011) (citations omitted) (Sotomayor, J., dissenting) ("A number of . . . suits seeking injunctive relief have been dismissed as moot because the plaintiff was transferred from the institution where the alleged violation took place prior to adjudication on the merits."); *see also Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (concluding that inmate's claims for declaratory and injunctive relief were rendered moot upon inmate's transfer from the prison about which he complained); *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (inmate's request for injunctive relief mooted upon transfer from relevant prison); *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993) (same). This is because an inmate's transfer or release ends the alleged violations of his or her constitutional rights, which "render[s] the court unable to grant the requested relief." *Berger*, 983 F.2d at 724; *Fredette v. Hemingway*, 65 F. A'ppx 929, 931 (6th Cir. 2003) (concluding that an inmate's request for injunctive relief to prevent his transfer to another prison became moot upon the inmate's subsequent transfer because "the district court was unable to grant the relief requested").

*Huffman v. Pairan*, No. 2:21-CV-3611, 2021 WL 3883917, at *1 (S.D. Ohio Aug. 31, 2021), *report and recommendation adopted,* No. 2:21-CV-3611, 2021 WL 5003451 (S.D. Ohio Oct. 27, 2021). Since the events described in Plaintiff's complaint, he has been transferred from URF to SRF. Therefore, although the facts as alleged by Plaintiff support an Eighth Amendment claim against Defendant Curtis, the Court will dismiss Plaintiff's claims for declaratory and injunctive relief as moot.

9

### 2. Retaliation

Plaintiff also claims that Defendant Curtis retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claim against Defendant Curtis is entirely conclusory. Although Plaintiff asserts that Defendant Curtis was motivated by a grievance, he fails to allege any specific facts in support of this assertion. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's retaliation claim against Defendant Curtis is properly dismissed.

### C. Defendant Martin

Plaintiff claims that Defendant Martin was negligent with regard to the handling of Plaintiff's PREA complaint, and that he failed to comply with PREA guidelines before denying Plaintiff's PREA grievance. In addition, Plaintiff makes a conclusory assertion that at some point, Defendant Martin transferred him back to a unit where Plaintiff had previously expressed he was at risk of harm, and that this resulted in him being assaulted by another prisoner.

1. **Due Process**

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Martin's conduct did not deprive him of due process.

2. **First Amendment – Right to Petition Government**

Nor was Plaintiff's right to petition the government violated by Defendant Martin's handling of his PREA grievance. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendant Martin's actions have not barred Plaintiff from seeking a remedy for his claims. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving

11

a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff's PREA complaint had been improperly handled and denied, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the PREA grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim.

### 3. Failure to Comply with PREA Guidelines

Plaintiff's arguments that Defendant Martin failed to comply with PREA guidelines fail to set forth a cognizable claim. Plaintiff "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff.") (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163,

at *2 (W.D. Ky. Aug. 19, 2014))); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate." (quoting *Amaker v. Fischer*, No. 10-cv-977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014))); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not."). Accordingly, to the extent Plaintiff asserts claims under the PREA against Defendant Martin, such claims will be dismissed.

    **4.**  **Retaliation**

    To the extent that Plaintiff is claiming that Defendant Martin retaliated against him, his claim is entirely lacking in merit. In the context of considering retaliation claims, the Sixth Circuit has stated that there is a First Amendment right to file an institutional grievance, in the sense that a prisoner may not be subjected to retaliation for filing one. Depending upon whether the retaliation arose from an inmate's constitutionally protected conduct, either a First Amendment or due process standard may apply to a retaliation claim. *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000). If the inmate is engaged in constitutionally protected conduct, the First Amendment standard enunciated in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc) applies. *Thaddeus-X* requires the prisoner to establish that (1) he was engaged in protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct, and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Under the due process standard, where the prisoner was not engaged in constitutionally protected conduct, the prisoner must show "an

egregious abuse of governmental power" or behavior that "shocks the conscience." *Herron*, 203 F.3d at 414 (citing *Cale v. Johnson*, 861 F.2d 943, 950-51 (6th Cir. 1988)).

In this case, Plaintiff complains about Defendant Martin's handling of his PREA grievance, specifically that he did not promptly give him an AIM #, and that he was never given a PREA grievance ID or a receipt number, and was told that the AIM # was all that was needed. Although Plaintiff filed a grievance against Defendant Martin regarding his handling of the PREA grievance, this grievance was filed after the allegedly improper conduct had already occurred. Plaintiff fails to allege that he engaged in constitutionally protected conduct prior to Defendant Martin's involvement with the PREA investigation. Nor does Defendant Martin's failure to give him an AIM # on the same day that Plaintiff filed the PREA complaint constitute an egregious abuse of governmental power or rise to the level of behavior which shocks the conscience. Therefore, the Court concludes that Plaintiff's retaliation claim against Defendant Martin is properly dismissed.

### 5. **Eighth Amendment**

Under legal claims, Plaintiff first asserts an Eighth Amendment claim against Defendant Martin, stating that he should have known that Plaintiff was at risk on the Westside of the prison, but that he nonetheless transferred Plaintiff to that unit, resulting in Plaintiff being assaulted by another prisoner. However, as noted above, Plaintiff fails to allege any specific facts with regard to this claim, including the date and manner of notification to Defendant Martin that he was at risk on the Westside, the date that he was transferred to the Westside, or the date and circumstances of the assault. Therefore, the Court concludes that Plaintiff's Eighth Amendment claim against Defendant Martin is properly dismissed. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Martin and Horton will be dismissed for failure to state a claim, under

28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation claim, as well as his claims for declaratory and injunctive relief, against Defendant Curtis. Plaintiff's Eighth Amendment claim against Defendant Curtis remains in the case.

    An order consistent with this opinion will be entered.

Dated:   July 28, 2022                         /s/ Jane M. Beckering
                                                              Jane M. Beckering
                                                              United States District Judge